UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO MENDOZA CHAVEZ,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>C. WOFFORD[1], Warden,<br><br>　　　　Respondent. | Case No.: 1:13-cv-00101 GSA HC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE<br><br>ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgment of the Superior Court of California, County of Kings, following his conviction by jury trial on November 5, 2010, of burglary, receipt of stolen property, conspiracy to commit burglary, theft with prior theft conviction, and possession of burglary tools, in connection with two separate incidents. On December 22, 2010, Petitioner was sentenced to serve a determinate term of nine years and eight months.

---

[1] Petitioner notes that C. Wofford has replaced James D. Hartley as Warden of his institution. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, C. Wofford is hereby substituted as Respondent.

Petitioner timely filed a notice of appeal. On May 11, 2012, the California Court of Appeal, Fifth Appellate District ("Fifth DCA"), reversed Petitioner's conviction for conspiracy to commit burglary. As a result, the sentence was reduced to nine years. The appellate court further remanded the case to the superior court to allow the court to exercise its discretion either to strike or impose certain enhancements that had been stayed. The judgment was affirmed in a reasoned decision in all other respects. Petitioner then filed a petition for review in the California Supreme Court. On August 8, 2012, the petition was summarily denied.

On January 22, 2013, Petitioner filed the instant federal habeas petition in this Court. The petition presents the following three claims of ineffective assistance of counsel[2]: (1) Petitioner faults counsel for failing to object to the admission of evidence of a burglary involving only Petitioner's accomplice; (2) Petitioner argues defense counsel rendered ineffective assistance by failing to object to the prosecutor's inflammatory comments during closing argument; and (3) Petitioner contends defense counsel rendered ineffective assistance by failing to make an opening statement, failing to present any evidence, and presenting a limited closing argument. On March 26, 2013, Respondent filed an answer to the petition. On May 13, 2013, Petitioner filed a traverse.

**STATEMENT OF FACTS**

Early in the morning of May 1, 2010, Lemoore police officers saw a pickup truck parked across the street from Economy Auto Wrecking, an auto salvage yard. They saw a man run from the entrance of the yard to the truck. Then they saw another man jump over the yard's fence from the inside and go to the truck. The officers approached and found Chavez in the driver's seat and Jeremiah Phillips in the passenger seat. Phillips was the one who had been seen jumping over the fence from the inside.

Near the front entrance of the wrecking yard, outside the fence, the officers found three cans filled with gasoline and a siphoning hose. They arrested the two men and contacted the owner of the wrecking yard, who said Chavez and Phillips did not have permission to be on the property. The officers searched the truck and found bolt cutters, tin snips, wire cutters, drills, flashlights, pliers, gloves, and an empty gasoline can. They also searched the men. Chavez had pliers, wrenches, and screwdrivers in his pockets. Phillips admitted to the officers that he and Chavez agreed to go to the yard to steal gasoline from a car there. Chavez apologized to the officers and said he was being stupid and needed the gasoline to get home. Later, Phillips testified that Chavez took the full cans when Phillips passed them over the fence, but Chavez did not agree to steal; the stealing was Phillips's idea alone and he had lied to Chavez to gain his cooperation, telling him a friend was a guard there and he had permission.

---

[2] In his traverse, Petitioner raises several other instances where he claims counsel rendered ineffective assistance. These claims were not presented in the original petition and therefore will not be addressed. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.1994) ("A Traverse is not the proper pleading to raise additional grounds for relief").

2

The wrecking yard consisted of a fenced area with a building inside. Some of the fence was chainlink and some solid.

On July 6, 2010, while Chavez was out on bail for the May 1 arrest, a motorcycle was stolen from the garage of Russell Brookshier near Hanford. Douglas Haddon, Chavez's friend, was arrested after burglarizing another home the following morning, and he implicated himself and Chavez in the theft of the motorcycle and also in the theft of a pickup truck. Police went to Chavez's apartment building the next day and found the missing motorcycle on the property, partially covered by a tarp. Chavez denied involvement in the theft, but said his fingerprints would be on the motorcycle because he had moved it so he could get through a gate. A barrel and a crate that had been in the stolen pickup truck were found near the motorcycle.

For the May 1, 2010, crimes at the wrecking yard, the district attorney filed an information in case No. 10CM1221. Count 1 charged a conspiracy to commit second degree burglary. (§§ 182, subd. (a)(1), 459.) Count 2 charged theft with prior theft convictions. (§ 666.) Count 3 charged misdemeanor possession of burglary tools. Three prior convictions were alleged to support the theft-with-priors charge. Two of these prior convictions were also alleged for purposes of sentence enhancement on counts 1 and 2 pursuant to section 667.5, subdivision (b).

For the July 6, 2010, crimes involving the motorcycle, the district attorney filed an information in case No. 10CM1922. Count 1 was burglary of the home of the owner of the motorcycle. (§ 459.) Count 2 was unlawful taking of the motorcycle (Veh.Code, § 10851, subd. (a)), but this count was stricken at the prosecutor's request during trial. Count 3 was receiving the stolen motorcycle. (§ 496d.) Two prior offenses were again alleged for purposes of sentence enhancement pursuant to section 667.5, subdivision (b). The information also alleged that Chavez was released on bail in the other case when he committed these offenses. The two cases were consolidated for trial.

The jury found Chavez guilty of all counts, found there was a person present during the residential burglary, and found the on-bail enhancement true. Chavez admitted all the prior offenses.

(Resp't's Answer, Ex. A (footnotes omitted).)

## DISCUSSION

I.     Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of Kings County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

1  Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en
2  banc). The instant petition was filed after the enactment of the AEDPA and is therefore governed by
3  its provisions.
4  II.     Standard of Review
5       Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred
6  unless a petitioner can show that the state court's adjudication of his claim:
7       (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
8
       (2) resulted in a decision that was based on an unreasonable determination of the facts in light
9  of the evidence presented in the State court proceeding.
10 28 U.S.C. § 2254(d); Harrington v. Richter, __ U.S. __, __, 131 S.Ct 770, 784, 178 L.Ed.2d 624
11 (2011); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 413.
12      As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal
13 law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28
14 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look
15 to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the
16 relevant state-court decision." Williams, 592 U.S. at 412. "In other words, 'clearly established Federal
17 law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at
18 the time the state court renders its decision." Id. In addition, the Supreme Court decision must
19 "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a
20 new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is
21 no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d
22 742, 754 (9th Cir.2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v.
23 Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established
24 Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision.
25 Carey, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.
26      If the Court determines there is governing clearly established Federal law, the Court must then
27 consider whether the state court's decision was "contrary to, or involved an unreasonable application
28 of," [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13; see also Lockyer, 538 U.S. at 72.  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)).  "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id.  If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard.  Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir.2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75-76.  The writ may issue only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington, 131 S.Ct. at 784.  In other words, so long as fairminded jurists could disagree on the correctness of the state courts decision, the decision cannot be considered unreasonable. Id.  If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision

is objectively unreasonable.  See LaJoie v. Thompson, 217 F.3d 663, 669 (9th Cir.2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires considerable deference to the state courts.  "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v. Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011).  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)).  However, a state court factual finding is not entitled to deference if the relevant state court record is unavailable for the federal court to review.  Townsend v. Sain, 372 U.S. 293, 319 (1963), *overruled by*, Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

III.   Review of Claims

Petitioner presents three claims of ineffective assistance of counsel.  First, he claims counsel failed to object to the admission of prejudicial evidence of a burglary involving only his co-defendant.  Second, he claims counsel failed to object to inflammatory remarks made by the prosecutor during closing argument.  Third, he claims counsel was ineffective in failing to make an opening statement, introduce defense evidence, or present an adequate closing argument.

These claims were presented on direct appeal to the Fifth DCA.  The Fifth DCA denied the claims in a reasoned decision. (Resp't's Answer, Ex. A.)  Petitioner then raised the claims to the California Supreme Court in a petition for review.  The California Supreme Court denied the claims without comment or citation of authority.  When the California Supreme Court's opinion is summary in nature, the Court must "look through" that decision to a court below that has issued a reasoned opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991).  The appellate court analyzed and rejected the claims as follows:

> Chavez argues that several aspects of his attorney's performance at trial deprived him of effective assistance of counsel in violation of the Sixth Amendment. To establish ineffective assistance of counsel, defendant must show that counsel's performance "fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694; see also *People v. Hester* (2000) 22 Cal.4th 290, 296.) It is not necessary, however, to determine whether counsel's challenged action was professionally unreasonable in every case. If the reviewing court can resolve the ineffective assistance claim by proceeding directly to the issue of prejudice—i.e., the issue of

whether there is a reasonable probability that the outcome would have been different absent counsel's challenged actions or omissions—it may do so. (*Strickland v. Washington, supra*, at p. 697.)

Chavez first contends that his counsel should have objected to the presentation of evidence by the prosecution of a burglary that Chavez was not involved in, committed by his accomplice Haddon acting alone early in the morning following the night of the motorcycle theft. The jury heard evidence that Haddon was arrested that morning after breaking into another house and stealing pizza, beer, and a GPS (global positioning system) device.

Chavez argues, and the People deny, that the evidence was irrelevant and Chavez's counsel was obligated to object to it. We need not decide whether counsel fell below the mark of professional reasonableness in not objecting, however, because Chavez has not demonstrated prejudice even if an objection were in order. The evidence against Chavez was straightforward. The police caught him at the wrecking yard with the stolen gasoline and the burglary tools and found the stolen motorcycle in his yard. The defense presented no evidence. There is no likelihood that the jury would have reached a different verdict if the evidence of Haddon's additional burglary had been excluded upon Chavez's counsel's objection.

Chavez next argues that the prosecutor made inflammatory comments during closing argument, and that defense counsel rendered ineffective assistance by failing to object to these comments. The prosecutor told the jury that people live in a bubble and are unaware of the existence of bad people in the world, and the trial might have startled the jurors by exposing them to criminals, whom the prosecutor compared to repulsive creatures:

> "So I feel like—see, I don't know you, but I feel like perhaps your bubble was a little bit burst during this trial. I mean, when you got to meet these people and you learned that there are people that live like this it seems like—when we met people like Haddon, running around our community without shoes in a stole vehicle, people like Jeremiah Phillips, who sat there, and it seems to me, the way he said it, he was proud to say, 'I'm a dealer.' He said it with some pride.
>
> "And you know, there is such a cliché that there is a thin blue line between society and those that would destroy it, the maggots, the le[e]ches that would suck off the life of civil society."

Next, after comparing Chavez to some "disgusting" "crumbs of . . . Doritos" he found under the cushions of his couch, the prosecutor went on to say Chavez and Haddon were like "zombies," "the walking dead, trying to get, slowly trying to get you . . . and we're walking around our malls, driving our vehicles, and they're amongst us. [¶]. . . [¶] [J]ust like zombies, you can close the door and put that bolt on and close the windows, close the shutters, but he's still coming, and he came for that motorcycle from the [Brookshiers] and he took it from that garage."

Then the prosecutor described his own experiences as a child in El Salvador, in "the 1980's when there were revolutions going on and we had moved from the countryside because it was really bad there at one point, and it was like the smell of death." His family moved to the city to escape the violence, but it "started to get that even in the cities they were coming." Even in the city, he said, "I could hear, off in the distance I could hear the sound of bombs going off, and machine guns going off . . . ." The prosecutor then compared Chavez with the bombs and machine guns:

> "Unfortunately, it seems, Pablo Chavez, he's the sound of the bombs going off in our bubble that we live in. And in this society he's the sound of the machine gun outside, metaphorically, because he will stop at nothing. He will open those garage doors and

> take what is not his. It doesn't matter whether those doors are locked or not."
>
> We agree that the prosecutor's comments were dehumanizing and did not contribute to the jury's rational consideration of the evidence. There was no violation of the Strickland standard, however, because it was not reasonably probable that Chavez would have obtained a better outcome absent these comments. As we have just said, the evidence against Chavez was very powerful and he did not put on a defense. There is no likelihood that the jury would have reached a different verdict if the prosecutor had made a milder closing argument. This is so whether we consider defense counsel's failure to object to the closing argument separately or cumulatively.
>
> Last, Chavez contends that his trial counsel rendered ineffective assistance because he made no opening statement, put on no evidence, and limited his closing argument to briefly asserting that the prosecution did not present enough evidence to prove his guilt.
>
> We are not in a position to say these choices were professionally unreasonable. Counsel was confronted with a strong prosecution case. He might have decided not to make an opening statement because any confident prediction that the prosecution would fail to prove its case might have backfired, damaging counsel's credibility in the eyes of the jury. The decision to rest without calling any witnesses might have been dictated by the lack of any witnesses with anything helpful to say. The only exculpatory evidence was the testimony of Phillips that Chavez believed Phillips had permission to take the gasoline and the testimony of Chavez's girlfriend that Chavez had been with her all night on July 6, 2010. This evidence came out during the prosecution's case, so there was no defense evidence to present. The thrust of counsel's closing argument—merely that the prosecution had failed to prove its case—is again easily explained as the logical approach in light of the absence of evidentiary support for any other strategy.
>
> We can reverse for ineffective assistance of counsel "only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission." (*People v. Fosselman* (1983) 33 Cal.3d 572, 581), or there """simply could be no satisfactory explanation."" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) Chavez has not made the showing necessary to establish that his trial counsel failed to perform with reasonable diligence and competence.
>
> Chavez remarks near the end of his opening brief that defense counsel "addressed the standard of reasonable doubt by telling the jury that if they were firmly convinced that . . . defendant is guilty they must find him guilty." This sentence may appear to suggest that counsel stated the reasonable-doubt standard incorrectly. Chavez's brief never develops the point, however, so the argument is forfeited. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366, fn.2.)

(Resp't's Answer, Ex. A.)

The law governing ineffective assistance of counsel claims is clearly established. Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Harrington v. Richter, supra, 131 S.Ct. at 787; Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by

1  the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that "counsel's

2  representation fell below an objective standard of reasonableness," and must identify counsel's alleged

3  acts or omissions that were not the result of reasonable professional judgment considering the

4  circumstances. Harrington, 131 S.Ct. at 787 (citing Strickland, 466 U.S. at 688); United States v.

5  Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Petitioner must show that counsel's errors were

6  so egregious as to deprive defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at

7  688. Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a "'strong

8  presumption' that counsel's representation was within the 'wide range' of reasonable professional

9  assistance." Harrington, 131 S.Ct. at 787 (quoting Strickland, 466 U.S. at 687); Sanders v. Ratelle, 21

10  F.3d 1446, 1456 (9th Cir.1994).

11        Second, the petitioner must demonstrate prejudice, that is, he must show that "there is a

12  reasonable probability that, but for counsel's unprofessional errors, the result ... would have been

13  different," Strickland, 466 U.S. at 694.  "It is not enough 'to show that the errors had some

14  conceivable effect on the outcome of the proceeding.'" Harrington, 131 S.Ct. at 787 (quoting

15  Strickland, 466 U.S. at 693).  "Counsel's errors must be 'so serious as to deprive the defendant of a

16  fair trial, a trial whose result is reliable.'" Harrington, 131 S.Ct. at 787-788 (quoting Strickland, 466

17  U.S. at 687).  A court need not determine whether counsel's performance was deficient before

18  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland,

19  466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not

20  result in prejudice must necessarily fail.

21        Establishing that a state court's application of Strickland was unreasonable under 28 U.S.C. §

22  2254(d) is very difficult. Harrington, 131 S.Ct. at 788.  Since the standards created by Strickland and §

23  2254(d) are both 'highly deferential,' when the two are applied in tandem, review is 'doubly' so.

24  Harrington, 131 S.Ct. at 788 (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).

25        A.    Failure to Object to Admission of Prejudicial Evidence

26        Petitioner first claims defense counsel rendered ineffective assistance by failing to object to the

27  admission of evidence of the burglary involving Petitioner's co-defendant.  As set forth above, the

28  state court determined that regardless of whether counsel erred or not, the alleged error did not

1  prejudice Petitioner because the evidence was overwhelming and there is no probability that the result
2  would have been different if counsel had objected.

3        The state court finding was not unreasonable.  As noted by Respondent, the evidence showed
4  that Petitioner and co-defendant David Haddon took part in a crime spree on the night of July 6, 2010,
5  and continuing into the next morning.  (RT$^3$ 78-108.)  During this time, a motorcycle was stolen from
6  the Brookshiers' residence, a Ford Ranger was stolen from A.J. Slender Dairy, and someone had
7  attempted to steal a white pickup from Excelsior Farming. (RT 75-108.)  Shortly before 6:00 a.m. on
8  July 7, 2010, Michael Semas was awakened by his home alarm.  As he went through his house to
9  investigate, he came upon an intruder in his garage. (RT 37-40.)  Semas called 9-1-1 and soon
10 thereafter, codefendant Douglas Haddon was apprehended. (RT 54.)  Haddon testified as a prosecution
11 witness in Petitioner's trial. (RT 205.)  Evidence of Haddon's confession to police was admitted.  (RT
12 239.)  In his confession, Haddon stated Petitioner participated in the thefts of the motorcycle and the
13 Ford Ranger, and the attempted theft of the white pickup. (RT 205-268.)  Haddon's confession was
14 corroborated by evidence of the recovery of the stolen items.  The motorcycle stolen from the
15 Brookshiers' garage was recovered from Petitioner's residence, and items that were missing from the
16 Ford Ranger that had been stolen from A.J. Slender Dairy were found at Petitioner's residence. (RT
17 75; 85-94; 105-106.)  There was also evidence that Petitioner was caught in the act of attempting to
18 steal gasoline from a wrecking yard in a separate incident. (RT 179-193.)  On that occasion, Petitioner
19 was found in possession of various burglary tools. (RT 182-193.)

20       In light of the strong evidence of Petitioner's guilt, there is no probability that an objection by
21 defense counsel to the evidence of the Semas burglary would have altered the outcome of the trial.  As
22 noted by Respondent, the jury would still have been presented with Haddon's confession, the fact that
23 the stolen items were recovered from Petitioner's residence, and the fact that Petitioner was caught in
24 possession of burglary tools while attempting a burglary.  Accordingly, Petitioner fails to demonstrate
25 that the state court's application of <u>Strickland</u> was unreasonable under 28 U.S.C. § 2254(d).  The claim
26 should be rejected.

---

[3] "RT" refers to the Reporter's Transcript on Appeal.

10

B.   Failure to Object to Closing Argument

Next, Petitioner claims defense counsel failed to object to highly inflammatory statements made by the prosecution during closing argument. In its rejection of this claim, the Fifth DCA noted that many of the statements made by the prosecution were indeed inflammatory and objectionable; nevertheless, the court determined that Petitioner did not suffer any prejudice. The court found that there was no likelihood the outcome would have been different had the prosecution made a milder argument.

As noted above, the evidence against Petitioner was strong. In addition, the jury was instructed that arguments by counsel were not evidence, and only witness testimony can be considered evidence. (CT[4] 172.) Given the strong evidence against Petitioner and the jury instructions warning against arguments by counsel, the state court determination that Petitioner suffered no prejudice under Strickland cannot be deemed unreasonable. The claim should be denied.

C.   Failure to Present an Adequate Defense

In the final subclaim, Petitioner argues defense counsel rendered ineffective assistance by failing to put on an adequate defense. He states counsel failed to make an opening statement, failed to present any evidence, and failed to make an adequate closing argument.

With respect to the decision to forego an opening statement, the state court did not find counsel's decision to be unreasonable. The state court reasoned that counsel may have made a tactical decision not to make an opening statement in light of the strong prosecution case he was faced with. Counsel may have decided to refrain from making arguments or claims with respect to the evidence that could later prove to be untrue, thereby losing credibility in the eyes of the jury. In any case, there was no prejudice. Petitioner does not show how the outcome would have been any different if counsel had made an opening statement.

As to the failure to present defense evidence, Petitioner does not state what evidence counsel should have presented. From the record, the only exculpatory evidence available was the testimony of Jeremiah Phillips, who testified that he told Petitioner he had permission to take the gasoline from the

---

[4] "CT" refers to the Clerk's Transcript on Appeal.

11

1  wrecking yard, and the testimony of Petitioner's girlfriend, who stated that Petitioner was with her on
2  the night of the crime spree. As noted by the appellate court, all of this evidence came out during the
3  prosecution's case which therefore obviated the need for defense counsel to present the evidence. The
4  state court's determination that counsel did not render ineffective assistance was not unreasonable.

5        Finally, with regard to the closing argument, defense counsel argued that the prosecution had
6  failed to prove its case beyond a reasonable doubt. The appellate court found counsel's argument to
7  be the "logical approach in light of the absence of any evidentiary support for any other strategy."
8  (Resp't's Answer, Ex. A.) Counsel argued that there was no evidence that Petitioner was at the
9  Brookshier home or that Petitioner had received the stolen motorcycle. Counsel acknowledged that
10 Haddon had implicated Petitioner in his confession; however, counsel pointed out that Haddon was
11 under the influence of methamphetamine and missing weeks of sleep at the time of the crime. Counsel
12 argued that the confession was not credible and noted that Haddon testified at trial that his confession
13 was untrue and he acted alone. With regard to the attempted burglary at the wrecking yard, counsel
14 pointed out that no one had seen Petitioner jump the fence and there was no evidence that Petitioner
15 took and carried away any of the stolen items. As to the burglary tools, counsel argued that they were
16 ordinary tools and that there was no evidence that any burglary tools had been used in the commission
17 of the offense. He further noted that Jeremiah Phillips had testified that he acted alone and that
18 Petitioner knew nothing about the burglary. Counsel then summed up the defense by arguing that the
19 prosecution had failed to prove beyond a reasonable doubt that Petitioner committed any of the
20 offenses.

21       Applying the Strickland standard, the state court found counsel did not render ineffective
22 assistance. A fair-minded jurist could conclude that this determination was not an unreasonable
23 application of the Strickland standard. 28 U.S.C. § 2254(d). Accordingly, the claim should be
24 rejected.

### CERTIFICATE OF APPEALABILITY

26       A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district
27 court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v.
28 Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a

certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

///

///

///

///

**ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED with prejudice;

2) The Clerk of Court is DIRECTED to enter judgment and terminate the case; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:  **May 22, 2013**                              **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE